THE UNITED ASSURANCE ASSOCIATION *v.* FREDERICK.

Opinion delivered May 28, 1917.

1. BENEFIT INSURANCE—AGE OF APPLICANT—KNOWLEDGE OF AGENT.— The knowledge of the agent of a benefit insurance company, who wrote the application, as to the applicant's age, is imputed to the company.

2. INSURANCE—WHO MAY BE BENEFICIARY IN LIFE POLICY.—When acting in good faith the insured may name whom he pleases as beneficiary in a life policy, whether the beneficiary has an insurable interest in his life or not.

3. BENEFIT INSURANCE—PENALTY AND ATTORNEY'S FEE.—In an action on a benefit certificate, *held*, it was improper to assess a penalty and attorney's fee against the defendant.

4. BENEFIT INSURANCE—NOTICE OF ASSESSMENTS DUE.—In the absence of an express provision in the contract, the mere posting of a notice that assessments are due is not sufficient, where the contract provides for a forfeiture of the certificate where assessments are not paid.

5. BENEFIT INSURANCE—NOTICE OF ASSESSMENTS DUE.—Where deceased held a certificate in appellant insurance order, *held*, the order would be liable on the same, if the deceased, or some one for him, paid all assessments against him, of which he received notice.

Appeal from Jefferson Circuit Court; *W. B. Sorrels,* Judge; modified and affirmed.

*W. P. Strait,* for appellant.

1. The court committed reversible error in giving instruction No. 1 for appellee as to *notice.* It throws the responsibility on the appellant to get this notice to, and into the hands of the assured or beneficiary. The contract does not require this and if the notice was placed in the mails in the ordinary way, properly addressed, the association discharged its duty under the contract. *Mutual Aid Union* v. *Wadley,* 125 Ark. 449. The contract provides for notice by *ordinary mail.* The testimony shows that the notice was mailed as provided, and there is no testimony that it was not received. The instructions asked by appellant are almost verbatim copies from the cases above cited. The burden was on appellee to show performance of all the provisions of the contract.

2. It was error to refuse No. 9 asked by appellant, as to applicant's age and health. The statement as to age was material and a warranty. 3 Joyce on Ins., § 1970; Cooley's Briefs on Insurance, 1130; May on Ins., § 156; 82 Ark. 400; 150 S. W. 393; 58 *Id.* 528; 96 *Id.* 495. If he did not know his age or guessed at it, the responsibility was on the applicant and not the insurer. 58 Ark. 528; 89 *Id.* 471; 84 *Id.* 57. The fact that the agent encouraged him in the erroneous statement does not relieve him. 58 Ark. 277.

3. The beneficiary had no insurable interest in the life of the assured. 98 Ark 52; *Ib.* 340; 104 U. S. 775.

4. It was error to assess the penalty and attorney's fees. The statute is purely penal and should be strictly construed. Besides fraternal benefit associations are exempt from the general insurance laws of this State. Kirby's Digest, § 4352; 104 Ark. 423. The assessment is without warrant of law and is error.

*Taylor, Jones & Taylor,* for appellee.

1. Every assessment was paid of which notice was received. There is no proof in the record that any member of his circle had died which would authorize an assessment and a forfeiture, if not paid within the time

provided. Forfeitures are not favored in law and when invoked all prerequisites necessary to sustain the forfeiture must be affirmatively shown. 2 Bacon Life & Acc. Ins. (4 ed.), § 484; 2 S. W. 495; 68 S. E. 842.

2. There is no evidence to show a forfeiture for nonpayment of assessment, whether notice was given or not, and plaintiff was entitled to a peremptory instruction. But the court submitted the question to the jury by instruction No. 1, and it is correct and properly given. Authorities, *supra*.

3. This instruction was not specifically objected to and appellant can not now complain. 78 Ark. 247; 84 *Id.* 81; 92 *Id.* 472; 93 *Id.* 509; 96 *Id.* 184. But the instruction is correct, as forfeitures are not favored and the policy is construed most strongly against the company. 113 Ark. 174; 58 *Id.* 528; 86 *Id.* 115. See also Bacon Life & Acc. Ins. (4 ed.), Vol. 2, § 489. The members must be *notified,* either orally, or by delivery through the mail or otherwise. 50 Mich. 273; 14 N. Y. Supp. 76.

4. There was no misrepresentation as to age or health. The agent made the estimate of age himself. 106 Ark. 91; 113 *Id.* 174; 81 *Id.* 205; 71 *Id.* 295; 111 *Id.* 435.

5. There was no proof as to whether the beneficiary had any insurable interest in the life of insured or not. A person may take out insurance on his own life and name anyone he pleases as beneficiary. 116 Ark. 527; 77 *Id.* 60.

6. The damages and attorney's fees were properly assessed. 86 Ark. 115; 92 *Id.* 378; Act 115 Acts 1905. This company is not exempt under Kirby's Digest, § 4352, and 104 Ark. 417.

SMITH, J. The appellant is a mutual insurance society organized under the laws of this State for the relief of its members, and for the mutual aid of beneficiaries of such members in case of death of the member. It is not based upon any subscribed or paid-up capital stock, either in whole or in part, but alone upon membership dues and *pro rata* assessments upon its members. Its business is conducted substantially as follows: A small

membership fee, or policy fee, is charged the applicant upon becoming a member and receiving a certificate thereon. When such party is accepted as a member, and the policy or benficiary certificate issued, the member is assigned to a circle, the membership being divided into circles of not exceeding 1,000 members each. In the event of the death of any member of any given circle, all the members in said circle are assessed a certain stipulated amount, according to the age and length of time such member has belonged to the association, from the proceeds of which the beneficiary named in the certificate of insurance receives payment of the value of the policy. The application, by-laws, and beneficiary certificates of the association all constitute a part of and, together, make up the contract between the parties. No medical examinations are made previous to accepting a member, but the statements of the applicant contained in his application are made warranties and the truth thereof a condition precedent to the right of recovery.

Ben Hegwood was a member of the appellant company and, as such, held a policy payable to Adam Frederick, the appellee, who had no insurable interest in the life of the assured.

Upon the death of Hegwood, appellant refused to furnish necessary blanks for proof of death, it being asserted by the company that the member stood suspended at the time of his death for the nonpayment of an assessment, due notice of which had been given by mail. The application and certificate provided that notice of assessment should be given Frederick, and he testified that he had paid all assessments of which he had ever received notice. The application contained the following provision in regard to notice:

"It is understood that the value and conditions of this policy to be issued on this application shall be as follows: * * * It is understood that the secretary of the United Assurance Association is to notify said applicant, by ordinary mail, to the last known address and to that stated, of any death occurring in the circle of

which policy-holder is a member, which will make applicant liable for assessment, and of the proper amount of the assessment due thereon, and prompt payment of the same must be made within fifteen days to the Home Office, and failure on the port of appellant to pay the assessment within thirty days from date of notice, as provided by the by-laws, forfeits and voids this policy.''

The policy contained the following language upon this subject:

''Upon the death of any member of the above named circle, the within named member shall within thirty days from the date of the notice thereof, which the secretary of this association shall have mailed to the within named member, pay to this association an assessment which shall be equal to the sum of one cent for each year of the age of the within named member at the time of the issuance of this policy plus the sum of one cent for each month of time the within named member has been a member of this association, provided, that with the eightieth month from the date of this policy the maximum assessment shall have been reached and will amount to $1.34.''

Upon the issue of notice, the court gave the following instruction:

''1.    If you believe from a fair preponderance of the evidence that the defendant issued unto Ben Hegwood the certificate of membership introduced in evidence, and that all assessments of which he received notice were paid by him, or some other person for him, and that the said Ben Hegwood died on the 18th day of July, 1916, then your verdict should be for the plaintiff in the sum provided in the certificate of membership, together with interest thereon at the rate of 6 per cent per annum from the 22d day of August, 1916, to date.''

The correctness of this instruction presents the principal question in the case, although other questions are presented, and these latter questions will be first considered.

(1)    The by-laws of the order provided that no certificate should be issued to any person who was over 55 years of age. And there was offered in evidence the marriage record of Hegwood, which showed that on November 14, 1898, he was 45 years old, and, if this statement of his age was true, he was beyond the insurable age permitted by the appellant company on December 12, 1914, when the certificate sued on was issued. But the proof shows that Hegwood made no statement of his age, and the agent of the company who wrote the application testified that, from questions which he asked Hegwood, he estimated Hegwood's age to be 54, and wrote that figure down as being his age, and that Hegwood was an illiterate negro who did not, and could not, read the application, and signed it by mark. This proof being undisputed, there was no issue as to the misrepresentation in regard to age, because the knowledge of the agent who wrote the application is imputed to the company. *Hutchins* v. *Globe Life Ins. Co.,* 126 Ark. 360, 190 S. W. 446; *Fidelity & Casualty Co.* v. *Meyer,* 106 Ark. 91; *Maloney* v. *Maryland Casualty Co.,* 113 Ark. 174; *Mutual Reserve Fund Life Association* v. *Cotter,* 81 Ark. 205.

(2)    The right to recover is denied because the beneficiary had no insurable interest in the life of the member. The proof is undisputed, however, that the member took out this policy himself, and that the beneficiary knew nothing of the application until after it had been written. While appellee would have had no right to have taken out this policy himself, because he had no insurable interest in the life of the assured, still the assured had the right so to do. In the case of *Langford* v. *National Life & Acc. Ins. Co.,* 116 Ark. 527, a syllabus is as follows:

"A person may take out insurance on his own life, and name any one that he pleases as beneficiary, and where there is no understanding between the insured and the beneficiary, at the time the policy is taken out, the policy will be held valid, although the beneficiary had no insurable interest in the life of the insured, and the policy

will not be rendered void, if, thereafter, the beneficiary paid the premiums on the policy up to the time of the insured's death." See, also, *Matlock* v. *Bledsoe,* 77 Ark. 60; *Prudential Ins. Co.* v. *Williams,* 113 Ark. 373.

(3). An attorney's fee, together with a penalty, were assessed against appellant, and this action of the court is questioned as not being authorized by law. We think counsel is correct in this contention. Statutes providing penalties are strictly construed, and the penalty is not charged in any case unless there is express statutory authorization therefor. Under the authority of the case of *Knights of Maccabees* v. *Anderson,* 104 Ark. 417, we think the penalty and attorney's fee should not have been charged.

To return to the consideration of the correctness of appellee's instruction numbered 1, set out above, on the question of notice of assessments, it may be said that counsel for appellant insists that notice is given when a letter, containing the information in regard to the assessment, is deposited in the mails, and that, if this is done, it is immaterial that the notice was never, in fact, received. Counsel argues that such is the meaning of the language above quoted from the application and the policy, and that this is the effect of our decision in the case of *Mutual Aid Union* v. *Wadley,* 125 Ark. 449. But we do not agree with counsel in either contention. In the case cited, there was proof tending to show that notice had been sent by mail, which we held sufficient to warrant the submission of that question to the jury. The trial court had taken the contrary view, and we reversed the judgment on that account. We did not there discuss the presumption arising from proof of the mailing of a letter. The point in that case is correctly summarized by the syllabus, which is as follows:

"It is a question for the jury, whether notice was sent out to deceased that an assessment against her was due, and whether she received the same, where, by the contract of insurance, deceased's policy was to become

void for failure to pay an assessment after proper notice.''

We there decided only that the facts recited presented a question for the jury to say whether notice was given. Had that question been submitted in the court below in that case, the beneficiary would have been entitled to appropriate instructions on the presumption arising from the proof of mailing a letter, the law of which subject is thoroughly discussed in the following cases: *Southern Engine & Boiler Works* v. *Vaughan,* 98 Ark. 388; *Bluthenthal* v. *Atkinson,* 93 Ark. 252; *Merchants' Exchange Co.* v. *Sanders,* 74 Ark. 16; *Click* v. *Sample,* 73 Ark. 194; *Planters' Mutual Ins. Co.* v. *Green,* 72 Ark. 305.

The question not having been previously decided by us, we proceed to consider it upon its merits. It may be conceded that the contract of insurance might have made the proof of mailing notice conclusive of the fact of notice. But a construction so harsh in its nature, and so disastrous in its practical operation, is not to be adopted unless the language employed requires that construction, for contracts of this character are construed most strongly against the company which chooses the language employed in the contract. A recent case involving a similar principle is that of *Columbian Woodmen* v. *Hewitt,* 122 Ark. 480. There the policy provided that the assured, in the event of injury, should furnish satisfactory proof thereof, and to make this meaning clear, further provided that ''satisfactory proof shall be taken to mean an X-ray photograph made and certified by a physician selected by the Eminent Director.'' It was there said:

''The contention of learned counsel for appellant is that furnishing an X-ray photograph showing a fracture of the arm is a condition precedent to the right of recovery. We do not so interpret the language of the contract, according to the amended by-laws. The provision undoubtedly constitutes a requirement that satisfactory proof of the injury be furnished, and it undertakes to define what satisfactory proof is. According to its lan-

guage an X-ray photograph is defined to be satisfactory proof, but it does not state that the X-ray examination and the photograph thereof must show the fracture. This is an important distinction, for if it had been intended to make the right to recover depend upon the fact that an X-ray photograph revealed the existence of a fracture, then it could have been expressed in more appropriate language.  *.  *  *  Unless the contract itself expressly makes the right of recovery depend upon the existence of the loss as disclosed in the proof furnished, the assured has the right to resort to other proof in the trial of his suit.''

(4)  The insurance company may write into its contract a requirement that certain proof, and that only, shall be considered, just as it might prescribe that notice given in a certain manner shall be conclusive of the question that notice was given, or that notice shall be given in a certain way, and that no other notice shall be required. But unless it is so provided, the question, whether notice of a particular assessment was given to a member liable therefor, is to be decided by a consideration of the applicable rules of evidence.

Under the terms of the contract involved in the instant case, the undertaking and agreement on the part of the insurance company was to notify the insured. It was not provided that, upon the maturity of an assessment, the company, through its proper officer, should deposit in the mail a notice of the levy of an assessment, and the amount thereof, and that the policy should forfeit if the assessment was not paid within a certain number of days from the date of mailing; but its language is that they shall notify the insured, and the insured was not in default, nor was his. policy liable to cancellation or forfeiture, until the lapse of the time limited from the date of the notice of the assessment.

The question under consideration was involved in the case of *Home Benefit Association* v. *Jordan*, 191 S. W. 725, Tex. Court of Appeals. The duty of the company

to notify its members of the levy of assessments was there expressed in the following language:

"He (the secretary) shall keep the books of the society, make record of all bonds on the minute book, notify all members by postal card of assessments regularly made by the board of directors."

And the constitution of the insurance company in that case, among other things, provided that "All assessments must be paid within fifteen days from the date of the call. Members failing to pay same within the time prescribed shall stand suspended, and will no longer be entitled to any of the benefits of the society."

It was there said (to quote from the syllabus):

"Where the constitution of a mutual benefit association which levied assessments only upon death of a member required the secretary to notify by postal card all members liable, the word 'notify' should be construed 'to make known,' so that, where the insured failed to receive a postal card mailed by the secretary, notifying him of an assessment, such failure excused insured's failure to pay the assessment, and his beneficiary could recover.

(5) Appellee's instruction numbered 1, set out above, conforms to the views here expressed, and it is, therefore, approved as correctly construing the language of the application and policy set out in reference to the giving of notice.

The judgment will be modified by striking out the allowance of penalty and attorney's fee, and in all other respects is affirmed.