UNION LIFE INSURANCE COMPANY *v.* EVANS.

4-4528

Opinion delivered February 15, 1937.

*Rowell, Rowell & Dickey,* for appellant.

*Monk & McLeod,* for appellee.

BAKER, J. Since a jury has determined the facts in this case, they may be stated as so determined most favorably to the appellee. There is substantial evidence to support the verdict. *Standard Oil Co.* v. *Hydrick,* 174 Ark. 813, 296 S. W. 708; *Hall* v. *Jones,* 129 Ark. 18, 195 S. W. 399; *Arkansas Land & Lumber Co.* v. *Fitzhugh,* 143 Ark. 122, 219 S. W. 1022; *Mutual Benefit Health & Accident Ass'n* v. *Basham,* 191 Ark. 679, 87 S. W. (2d) 583.

Cal Frazier, an old negro, who lived near Pine Bluff, Arkansas, and who was about seventy-five years of age, made application for insurance with the appellant. Policy was in the sum of $200 and the insurance was payable to Sadie Evans, a foster-daughter, who lived in Pine Bluff.

The insurance agent who wrote this policy had known Frazier for several years. When asked how old he was, he stated that he did not know. He was only questioned concerning his age and his health. He was not able to read or write and appellee was asked to sign his name to the application. He did not know what the agent had written into the application. It was not read to him. Some time later, the exact date is immaterial, he was ap-

proached and asked to take out a second policy and he advised on that occasion that he was too old; that he was more than seventy. The agent of the insurance company advised him that that made no difference, that that could be arranged satisfactorily. The second policy was issued. Both of these policies were delivered to Sadie Evans.

These policies are what are generally termed as non-medical policies, that is to say there was no physical examination. Whatever answers were made have not been treated as warranties.

Some months after the last insurance policy was issued Frazier died. The insurance company refused payment, but acknowledged liability under one provision of the policy to the effect that if the insured was over the age of sixty that the company's liability would be limited to a return of the premiums. The policies being in full force and effect, except as affected by the age limit, the company offered a return of the premiums. Appellee refused the offer. A suit was filed upon one of the policies in municipal court.

Upon judgment having been rendered there in favor of the beneficiary, an appeal was prayed to the circuit court where a suit was filed upon the other policy and the two cases were then consolidated for trial. Upon trial, judgment was rendered for the beneficiary upon both policies and an appeal has been duly prayed to this court.

Upon this appeal only two real issues are presented, though one or two other matters were argued incidentally for our consideration. The first issue is that Cal Frazier was over age; that there is no liability in excess of the premiums paid by him. The second is that Sadie Evans is not his daughter, and, therefore, had no insurable interest in his life.

The foregoing statement for the purpose of our discussion will be treated as substantially correct without quoting from the testimony of witnesses or going into minute detail or stating other facts, except as they may be incidental to any issues as they are considered.

According to the statement presented by appellants there was only one occasion on which Frazier made a defi-

nite statement in regard to his age and that was the time of the application for the second policy. The agent of the insurance company says that at the time of the first application they figured out what his age was and it is certain that the agent wrote into the application the month, the day thereof, and the year, so as to show Frazier to be fifty-five years of age. It was only a short time later that the second application was signed and this at the instance of the insurance agent who was advised on that occasion by Frazier himself that he was more than seventy years of age. It now appears certain that he was more than seventy-five years of age and, notwithstanding this information, that the agent wrote into this second application the same date that was written into the first, giving the day of the month, the month, and year of birth, showing Frazier to have been 55 years of age. It might be remarked incidentally that after these policies were issued an inspector of the company visited Frazier, presumably, as we gather from this record, to determine the fact of his insurability. He duly approved Frazier for insurance.

From the foregoing facts it must be apparent that there was no fraud or collusion of any kind as between Frazier and any representative of the insurance company in regard to the age stated in the application. When the policies were delivered it was further stated by the insurance company's agent that the policies were good for $200 each and they were left, according to directions, with Sadie Evans. It is not shown that she ever read the policies, but it is shown that Cal Frazier could not have read them had they been delivered to him, nor is there any information that he ever at any time, knew that there was a false statement in the application in regard to his age.

It is argued with considerable force that Frazier misrepresented his age, that had he made a true statement in regard thereto the policies would not have been issued. The facts have been determined contrary to this contention. Agents of the insurance corporation employed to solicit applications acting wholly within the scope of their

authority, with full power to bind the principal in that regard, wrote these applications for insurance. At least two, possibly, three or more of the company's agents saw Frazier on several occasions before and immediately after this insurance was in force. At least two of them knew that he made no misrepresentation, statement or warranty in regard to his age, except that he was more than seventy years old and notwithstanding these facts these agents, presumably with full powers of observation, wrote into the applications definite dates showing an age, at least twenty years younger than he actually was. Ordinarily, the falsity of this statement would have been apparent from observation of the applicant. It is possible, but hardly probable, that the agent could have been so seriously mistaken as to write in the age of fifty-five for a man more than seventy-five years old.

However, whether this statement as to age so made and written into the application by the agent of the company and not by Frazier was a mistake, or whether it was done intentionally is not a question for our consideration. A jury has found and determined that there was no fraud or deception on the part of Frazier. That is conclusive.

Since it has been determined that the agent of the insurance company, and not the applicant, wrote into the application misstatements as to age we might well refer to an opinion written by Chief Justice McCulloch wherein practically the same state of facts existed. *Walker* v. *Illinois Bankers' Life Ass'n,* 140 Ark. 192, 196, 215 S. W. 598.

The argument of appellant that Frazier misstated his age is based almost exclusively upon the written application of insurance wherein the misstatement is made and to which Frazier's name is signed.

In the instant case, the misstatement of the age was not made or participated in by the beneficiary who wrote the applicant's name to the application. Nor was the applicant given a chance to correct this error, if it was one, as the application was not read over to him; so it must appear if there was a mistake or an intentional misstatement of the age, the fault was not chargeable to the in-

sured or beneficiary, but was wholly that of appellant's agent, who as such agent knew or learned the actual facts, and appellant will not be permitted to take advantage of its own erroneous, if not willful, misconduct, to defeat the effect of the policy. *Gray* v. *Stone,* 102 Ark. 146, 143 S. W. 114; *Mutual Aid Union* v. *Blacknall,* 129 Ark. 450, 196 S. W. 792; *Home Mutual Benefit Ass'n* v. *Rowland,* 155 Ark. 450, 244 S. W. 719, 28 A. L. R. 86; *United Assurance Ass'n* v. *Frederick,* 130 Ark. 12, 195 S. W. 691; *Springfield Mutual Ass'n* v. *Atnip,* 169 Ark. 968, 279 S. W. 15; *Fayetteville Mutual Benefit Ass'n* v. *Tate,* 164 Ark. 317, 261 S. W. 634; *Fidelity & Casualty Co.* v. *Meyer,* 106 Ark. 91, 152 S. W. 995, 44 L. R. A. (N. S.) 493.

We have but recently considered a very similar proposition wherein we held contrary to appellant's contention now made. The *Security Benefit Ass'n* v. *Farmer, ante p.* 370, 99 S. W. (2d) 580. The authorities there cited are applicable here. We there said: ''We are therefore of the opinion that appellant is estopped to insist upon the false statements, conceding them to be false, in the application for insurance or in the health certificate signed at the time the policy was delivered because they are the statements of appellant's agent and not the statements of the insured.''

It is true the contract sued on in this case provides that in the event of misstatement of age, the limit of liability shall be the amount of premiums paid. Of course, the company has a right to contract against a misstatement made by the applicant and by suitable precautionary provisions to prevent fraud or deceit, but the company will not be permitted to contract against the fraud of its own agents or their mistakes as against those who deal with it through such agents, nor will the company be permitted to contract to the effect that the knowledge of the agent may not be imputed to it. *Mutual Aid Union* v. *Blacknall, supra.*

The principles announced in the last-cited case are sound and have been followed frequently since their announcement, and it can serve no useful purpose to hunt

out or set forth all of these numerous authorities. Let one suffice; it is in point. *Life & Casualty Ins. Co.* v. *Dunham,* 186 Ark. 121, 52 S. W. (2d) 620.

It has been determined that appellee did not procure these policies to be issued, and did not pay the premiums. There was, therefore, no wagering contract. Cal Frazier had the right to insure his own life. The fact that he named appellee as beneficiary was not violative of any public policy. Absent fraud in the procurement of the insurance, once the contract is made, the beneficiary might, if it were desirable, have kept premiums paid without impairment of the contractual obligations. *National Life & Accident Ins. Co.* v. *Jackson,* 179 Ark. 412, 16 S. W. (2d) 469; *Langford* v. *National Life & Accident Ins. Co.,* 116 Ark. 527, 173 S. W. 414, Ann. Cas. 1917A, 1081; *United Assurance Ass'n* v. *Frederick,* 130 Ark. 12, 195 S. W. 691.

We have given careful consideration to instructions given and to the refusal to give others and find no error. It might be said that as to instructions refused they were so framed as to apply to both policies alike, although there were certain matters or facts in evidence relative to one application not present as to the other that made it proper to refuse certain instructions as offered. There is no good reason for further elaboration. Upon the whole case there is no error shown.

Judgments are affirmed.